Mr. Schafer. May it please the Court. John Schafer representing EchoJet, the appellate in this case, and I'm reserving five minutes for rebuttal. In this case, Michael Johnson, a Ph.D., a renowned hydrologist, a person of ordinary skill in the relevant art, and our expert in this case. So, if you look at these caps, which you have supplied to us, if I understand correctly, I have one of the caps here in front of me, that this feature, which is labeled CR on the cap, if that's what you contend constitutes the wall? Yeah, the space between the inlet holes and the outlet holes, you'll see there's a little ridge there. And the way we know that's a structure, Your Honor... But you agree that it's what's labeled CR? I don't have the CR reference in front of me. It's labeled on the cap. It was not labeled on the cap at trial, so that may be something that's put on. Well, it's etched into the cap. I honestly don't... It is the space in between, there's a little ridge there. If there's a CR there, then that would be the general area where it is. But you'll see there's an indentation on the cap going around the edges. I think an issue by the district court below was whether or not that constituted a structure. And the way we know it's a structure, Your Honor, is that the appellee's chief technology officer removed that structure on the advice of counsel. So it's not just a flat surface or a pressure alone that's causing it. Why couldn't the district court properly conclude that it's just a flat surface and not a wall? The district court couldn't properly conclude that because you had a person of ordinary skill in the art saying that it was. Well, but you can look at the device itself, right? And we have no evidence to the contrary. And under the center cut case... Why isn't the device itself evidence? The device itself is evidence, but it comes down to an issue that I think is fundamental to patent law, which is under what standard do we judge infringement? Is it from the perspective of someone of ordinary skill in the art? How would they view this element on the product? Or is it an ordinary trier of fact? And if you look at every other element that exists under patent law, it's always decided on the standard of a person of ordinary skill in the art. Obviousness, the doctrine of equivalence. Here, I'm not finding any case law on it, but you're really confronted that issue because you have a person of ordinary skill in the art who's saying, my review of this product, knowing this industry, and understanding how hydraulics works, this is a wall. And any other person of ordinary skill in the art would recognize this as a wall. A Pelley's expert was stricken. There is no evidence in the record from which the judge could reach that conclusion other than the judge's own review of the product. This is exactly what happened in the center cut case. The center cut case. Yeah, but center cut says you have to have expert testimony in less simple technology. And I'm not arguing here that you need expert technology. I'm an expert that you need complicated technology or simple technology. What my point is, is did we have a preponderance of the evidence? When we offer the testimony of a person of ordinary skill in the art who says it practices the element, the judge didn't say in his decision, I disagree with him. What the judge says in his decision is we didn't have a preponderance of the evidence. Well, by definition, we met the basic threshold of that standard since no other evidence was admitted in the record. If for example, except for the cap itself, but no one on a Pelley's side said there was no wall there. There's just a complete absence of evidence. So what you have is a judge disagreeing with a person of ordinary skill in the art. And I would agree with your honor that if we are going to judge infringement by how the trier of fact looks at it, that is fine. We can have that standard and that standard should be clearly articulate, which would be a different standard that exists in all other elements of patent law. But when you have a person of ordinary skill in the art offering that testimony that it practiced it, and it's not one of those instances because there are a number of cases where there are a number of experts, because the expert's opinion is not founded upon evidence. The expert very quickly just says, oh, it practices this element, it practices this element. Here, our expert, Dr. Johnson, specifically explained how and why his decision-making process came from. He examined the caps, he examined the CAD drawings, and from an understanding how these work, he said that is going to perform the function of a wall as the term was construed by the court, a structure that separates volumes. Now there's a whole variety of ways we could look at a wall, and you could look at this cap saying, that's no wall I've ever heard of before. But based on this court's construction, it is absolutely clear that by reducing that area, which Apelli's own chief technology officer admitted he did, it caused that pressure to separate the volumes to allow it to work. Mr. Shaver, let me ask you though, I'm looking at the bottom of Appendix 10, and this is the District Court Opinion, Paragraph 16, the judge says, what Dr. Johnson actually identified as the wall structure was simply the general surface of the cap itself between the inlet holes and outlet, and then he continues, the court's construction of wall requires a structure, not simply a boundary defining a space. Now he's here, he's applying the claim construction, he's the finder of fact, and while you would disagree with that, how is that finding clearly erroneous? That finding focuses right on the structure, which is what the fact finder has to do. Because what he's done is he's changed his claim construction. He's now said that in order for there to be a wall, there needs to be a structure over and above or on top of the cap. And if you look at Claim 20, it dresses that perfectly. Because Claim 20 defines the wall as a wall being formed by the inner surface of the cap. So taking that subsequent clause by the inner surface of the cap completely undercuts the court's conclusion there because he's adding an additional structure. If the court's claim construction previously required such a structural limitation or an additional element other than a structure that separates volume, you would be absolutely right. But as Your Honor knows, the court cannot change its construction after evidence is closed in order to reach a finding. And that effectively is what that ruling's doing. Under Hewlett-Packard and cases that have followed it, what happens when there's been no objection and no issue about the claim construction is that you look to see whether the determination of infringement that's made under the claim construction is a reasonable determination. And if I understand you, you're saying the only reason that you should win is that you had an expert who said this isn't a wall and that the district court had to accept that expert testimony despite his ability to look at the cap. Oh, no, absolutely not, Your Honor. We're not saying simply having an expert allows you to win. So for the example where the expert's opinion is not founded on any other type of evidence, then the expert can be rejected. But this is not that type of a case. This is a case where there— You're saying that once the expert says I'm an expert and there's a wall here, the district court can't say I've looked at the device and I don't see a wall, and so you lose. He can't say that. But what you're saying there, Your Honor, then, is that someone who does not qualify as a person of ordinary skill in the art can reject or ignore that evidence. And what the standard is for experts, as I understand it, is you can give the expert's opinion very, very little weight. But you can't simply ignore that it has no evidentiary value where the evidence is founded upon opinion. And to go back to your other point, the parties didn't just agree on a construction. The judge had a construction of a structure that separates volume. And the judge's construction where he adds that element may be appropriate under Claim 4 because if you look at how wall is defined in Claim 4 or how wall is part of the claim limitation, a wall being formed circumferentially on the inner surface of the cap. So you have two different limitations with respect to wall. You have one that uses on, and you have one that uses by. And when you're reading that footnote, Your Honor, you're seeing that the judge is saying I'm not seeing a structure independent of the cap. But the limitation in Claim 20 specifically says that the wall can be the cap. And that's what happened here. It was brought down in order to allow that pressure to exist to separate volumes. The issue I think the district court was having in its footnote is he was saying, well, there's no structure. It's effectively just being caused by the pressure. But that cannot stand either because we know that the structure was removed. The chief technology officer of Loraco removed that structure. And I'm going to reserve the rest of my time for rebuttal. Yes, let's hear from the other side and we will return to rebuttal. Mr. Norwood. It pleases the court. My name is Warren Norwood. I represent Loraco, defendant in the trial, and I'm here today. I have a presentation, but I want to make sure that we hit what's been asked already. As the court has observed, Penix 11, the court's conclusions of law, he looked at his claim construction and he recognized that we've talked about this and it requires a structure that's more than the general cap. In fact, he uses the phrase, it has to be more than a boundary in the claim construction order and in his findings, his conclusions of law. But what do we see from the expert? He says, I think there have to be walls in almost every pump. There has to be some boundary through by which the water is directed. And this is through walls, through guiding structures. And then when we asked, are you aware this patent was issued on the base of a particular wall structure, particular wall structure, he says, I didn't understand that. In this case, we have the happy circumstance that a very similar construction was provided as prior art and the inventor said, oh no, we have this little wall, this little tab that comes down here. It's an actual wall. This other, this prior art, it just has a flat surface. It's just a flat surface. It's not at all a wall. So we know and it was granted on that basis. It's in the appendix. So that testimony I just gave you is at 1326. So Dr. Johnson's arguing that every pump has a wall, which of course makes it meaningless. And he would say, and he says, well, the area as a wall works well enough, ignoring that. And then we asked him about this. He didn't know what the rule of recapture was, which was attempted by the inventor later on to try to get back this idea that he could use an area as a wall. It was disallowed. And then of course, Dr. Johnson says, I'm not familiar with the patent prosecution. I'm not familiar with doctrine of equivalence. I'm not familiar. I've got to say that I don't think that this is correct. I don't think at the infringement stage that you make a determination about what the prosecution history is. I mean, if this were a jury trial, that would be a property to put that in front of the court. You have to deal with the claim construction you've got, which no one challenged, and to determine whether the district court committed clear error in finding that this cap doesn't satisfy the claim construction. It's not supposed to be looking at that point to the prosecution history, to the specification, to the prior art. That's all irrelevant in making the infringement determination. But if we have a doctrine of equivalence that's disallowed, as it was by summary judgment, the court said, you can't use doctrine of equivalence. You can't use functional limitations. You have to show literal infringement. You have to show a wall. You can't simply say, this area works. And making that determination, and making that infringement determination, prosecution history, at that point is not relevant. That's not part of the infringement determination. That's claim construction. And claim construction is not in front of us. The claim construction was what it was. Neither party at this point disagrees with it. Well, I certainly, my point was that the court was following its claim construction, and the expert was not. The expert was saying, the area can be a wall. A flat surface can be a wall. And the court said that that couldn't be. But let me ask you, the term at issue, the claim term at issue is a wall. The court's construction was as follows. The court construes a wall to mean a dividing structure that separates a volume. So what we have to have is, do we have a structure that separates a volume? And then in his infringement ruling, he said, referred to the court's construction of wall requires a structure, not simply a boundary defining a space. Now why is there not some kind of structure in this cap? The way that I look at it, as I just said, if I were to take a BB and just roll it down, it'd just go right down. There'd be no, it wouldn't hit anything. There's nothing that I would consider a speed bump. There's nothing there. Opposing counsel talks about a ridge. I did a word search in the full transcript. Dr. Johnson never talked about a ridge. He never says or tries to make the argument that this so-called ridge, which you can kind of see, it's a difference in the angle. It's a little sort of a crest. Right. But Dr. Johnson didn't identify that. That's simply not in the record. The only place in the entire record of the entire case where the word ridge shows up as one time in the claim construction order when Judge Guilford is remarking that he comes to his conclusion that he's going to use the second definition of the wall which we provide. He declined to say that it had to be upright in a way that we wanted it to be. But he did say it had to divide. It has to be a real division. Did he use the word ridge? He used the word ridge one time in his claim construction. But it's nowhere else in the record, anywhere. And what did he say about it in the claim construction? He said that... As I'm looking at the claim construction here, is it A64 through... On this point, I guess, A64 through 67. Now, where does in that, does he talk about ridge or is ridge mentioned? I thought it was. Make sure. Now, was there some kind of a hearing at which it might have been mentioned? But just in the written record, where is it mentioned here? I guess I don't see it. I was just supposed to imagine that. Maybe we talked about it during the hearing. But it's nowhere, and Dr. Johnson never tries to make that argument. That's my real point. It's just not part of the record. You're saying it's not part of the expert's statement? Right. You cannot impute a discussion anywhere that Dr. Johnson speaks where he says, well, I've identified this ridge as the dividing structure. He never says that. In fact, he even says when we ask him, so the wall can be flat, he says yes. Sir, let me ask you one question that relates to your cross-appeal. Obviously, there's one of two possibilities here on the infringement issue. We would affirm or we would disagree with the district court and reverse, correct? Correct. Okay, now, obviously, if we were to reverse, you would want us to reach the inventorship cross-appeal, correct? Absolutely. If, on the other hand, we affirm, what is your position with respect to the inventorship cross-appeal? Do you still pursue it? Do you still want us to rule on it? What's your position? We still want you to rule on it. This is an active patent that's the basis of other patents. There's a lot going on. And so, it's still an important issue. If I go on, as the court has identified, the court, Judge Guilford found that there was a failure for the Ecojet to prove its case. As opposed to what my opposing counsel said, the trial transcript shows that Ecojet did not provide a competent testimony in favor of infringement. You cannot simply say an expert has spoken, thus and so, you win, just because the other side doesn't have an expert. It also, in order to get where it wants to go, it has to have a narrative that says LaRocco provided no evidence. Of course, LaRocco used the evidence of Dr. Johnson himself to show that they had a misunderstanding of what the claims were supposed to be and how it was supposed to be construed. We also had Dr. Lee that provided his personal involvement, what you can do. And, of course, this court has already said that the trial court can make its own judgment about who has credibility. As I've already said, Ecojet has to show literal infringement and not mere functional equivalence. The doctrine of equivalence was ruled on as an in summary judgment at 3.53, you can find it at 1164 in the record. They may not say this serves the function of a wall. They have to say this is the wall. That's the point of that. There's a figure of 20 that's part of an amendment that discusses this at 1594 and it's discussed by the Claim Construction Order. So, whenever the expert says this qualifies as a wall, it does not lead inexorably to a conclusion that it's provided competent evidence. It has to meet the claim construction. We observe, and we've already reserved a couple times now, in the appendix at 9 and 10, Judge Guilford's observation that Dr. Johnson identified the general surface of the cap only. What page is this in the appendix? It's on page 10. 10, okay. Yes, sir. Now, I would point out that this is not an expert, this is not a case of an exotic fire, we have to figure out what's going on. These are two people talking about a pump and everybody knows how the pump works. The only question is whether the interior surface of the cap, by itself, can be interpreted to be a wall in light of the claim construction. The opposing counsel and the expert wants to say it's the opposing cap and the impeller and all this together that provides the function of a wall. That's not what the claim construction requires. As I've already read, Dr. Johnson said there has to be a boundary. He describes it as a boundary at one point when we ask him, so it could be flat. He says, yes, the wall can be flat. So we would say Dr. Johnson's testimony is incompetent because he failed to testify the court's claim construction, but only on functional equivalents. This is not an argument available to a judge. As the court knows, and this court has taught, an expert may testify to the ultimate issue but nothing in the rule requires a fact finder to accept that conclusion. The court's already picked up on the misconstruction of symbol and symbol versus opticon. Arresting this case on expert testimony symbol was exposed to a risk that cross-examination of this expert would demonstrate that the accused advisors are non-infringing under a different and proper construction of the claims. Ecojet does give lip service to the standard, but their brief only argues that failure to give their expert sufficient credibility is the clear error necessitating reversal, even though fraud courts are free to reject expert testimony and not required. Opposing counsel has made much of the fact that we've advised them to go ahead and change their cap, and they did so, and it's not a problem. That doesn't lead to a finding of infringement. It leads to a prudent decision that says we don't get to get sued anymore on something that people can throw a hook on, but the fact is that we can make this change and it doesn't impact our operations at all, and it was easy. It certainly doesn't lead to a finding of infringement, but a finding that this was not a wall that had an impact. As you saw in Centrica, no expert is necessary for simple technology of this type. Ecojet claims that Judge Guilford ignored a wealth of evidence, and Ecojet failed to provide relevant evidence. Of course, the claim conclusions of law says otherwise. He also says that we provided our requirement for a claim was that we have a separate structure of some kind. You can see in the record at 64 through 66, Morocco proposed two definitions of the claim construction. The court ultimately picked the second one of those two. There was back to Centrica. In Centrica, the court found that when a defendant's expert testifies against infringement in a complex art and the plaintiff has no expert, the plaintiff is likely to fail. This case stands as an apt example of what may befall a patent law plaintiff who presents complex subject matter without inputs from experts qualified when the accused infringer has negated infringement with his own expert. We're different from that in every way. We didn't have an expert, and they did, but all they did... To me, this is kind of like an expert saying, all of these things happened five years ago, and he addresses it, and he explains every little thing that happened five years ago, but you have a statute of limitations of two years. That expert didn't help you. It provided a lot of testimony, a lot of evidence. If the doctrine of equivalence was available to Ecojet to prove its case, maybe it has something, maybe it wouldn't. But since it doesn't have that available, you can't say, well, it serves the function of, and therefore I get there. I'm assuming my 30 seconds is including the five minutes for rebuttal. Okay. Any other questions before I sit down? Thank you.  Mr. Shaffer. Thank you, Your Honor. Again, the construction of wall here is a dividing structure that separates volume. There's no dispute that the accused device works because it separates volume. My friend here is absolutely correct that why a defender or the appellee here changed their cap, their intent is irrelevant. But what is relevant about that is that something was removed, and that something is a structure. So while we may look at it as it flattened, worsened, well, is that angle meaningful? What we know is that LaRalco went through several designs of this cap until they got it to work. And the one they got work had a structure on it so that the water could be divided. And how do we know that was a structure? It was removed. And that's what our experts said. There's a structure between these two, and that's what makes it work. Do all of these types of pump need some type of structure to separate volumes? Absolutely. But the invention here is not simply the wall. The invention here was being able to accomplish that functionality with fewer parts. And the fewer parts here was to have the cap in and of itself have a structure that can perform that function. And that is what Dr. Johnson testified to. He didn't just offer blanket testimony that I'm an expert and this is it. He showed it to the judge. He provided demonstratives to the judge to show how it worked. He looked at the CAD drawings and drew it out. And in our reply brief, we show that structure. So while it may not be a wall the way we would understand a wall, it is clearly a wall as the parties agreed with the court's construction, a dividing structure that separates volume. There was a structure there that divided. And the fact that my friend here talks about that the accused device doesn't have the embodiment that was discussed in prosecution, that's meaningless. Because any embodiment, as you know, we're entitled to the full breadth of the claim. And I would agree that you may be able to defend the judge's ruling as not clear error with respect to 4, where in 4, the wall has the additional limitation of being formed circumferentially on the inner surface of the cap. But with respect to Claim 20, you have clear error. Because there, the wall includes the additional limitation of being formed by the cap. So the cap in and of itself has the structured wall. And that is what we have here. And that is what that limitation requires. So in 20, if the accused actually put an additional structure on their cap, they wouldn't practice that element. Because the cap in and of itself is not doing it. But here, the cap in and of itself is doing it. Now, let's go back to my last basic point here is we need some direction on how infringement is going to be judged. Because if it is to the standard of a person of ordinary skill in the art, which what Dr. is deserving of some weight. And the judge here did not say that, I believe it's something different. He said, we did not have a preponderance of the evidence. We absolutely did, because we had evidence. And while there are instances where you can, trirofax can reject or not can limit testimony based on credibility, A, there was no credibility determination here. And it's clear under, I believe it's the Bear case. You can't simply reject expert testimony and credibility grounds. And that's not here. So this would be a very unusual case to affirm a case where a judge simply disagrees with an expert. And on his own evaluation of the evidence, which was part of the center cut decision, the judge on his own did this. There was no independent witness who came up and testified. I don't believe it's a wall. There's no evidence in the record other than the device itself. And Judge Dyka's right. He's free to look at it. But is he free then to reject the expert? The argument here is the expert wasn't talking about the wall. The expert absolutely was talking about the wall as construed by this court. A dividing structure that separates volume. That's what it is. Thank you. Thank you. Just for a moment. You would save some time for cross-appeal, but there was no response. So I believe we have the arguments that we need. Thank you, Your Honor. Thank you.